UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KALPANA MUVVALA, et al.,<br><br>   *Plaintiffs*,<br><br> v.<br><br>CHAD WOLF,<br>Acting Secretary, U.S. Department of<br>Homeland Security, et al.,<br><br>   *Defendants*. | Civil Action No. 1:20-cv-02423 (CJN) |

### MEMORANDUM OPINION

  Plaintiffs seek to compel Defendants—various officials from the Department of Justice (DOJ), the Department of Homeland Security (DHS), and the United States Citizenship and Immigration Services (USCIS)—to adjudicate Plaintiff Muvvala's applications to extend her H-4 status and renew her Employment Authorization Document ("EAD"), which remain outstanding. *See generally* Pls.' Compl., ECF No. 1. For the reasons set forth below, the Court denies Plaintiffs' Motion for Temporary Restraining Order and Mandatory Injunction, ECF 5, 6.

### I. Background

  The Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101, *et seq.*, regulates the admission of aliens into the United States, including the temporary admission of nonimmigrants for a specific purpose. Relevant to the case at hand, the H-1B program permits the temporary admission of foreign citizens to work for American employers in "specialty occupation[s]." 8 U.S.C. § 1101(a)(15)(H)(i)(B). A nonimmigrant employee's H-1B status is valid for an initial period of up to three years and can be extended for an additional three years. 8 U.S.C. § 1184(g)(4); 8 C.F.R. §§ 214.2(h)(9)(iii)(A)(1), 214.2(h)(15)(ii)(B)(1).

1

The INA also authorizes nonimmigrant "H-4 status," which permits the spouse and minor children of H-1B nonimmigrants to be admitted with the H-1B nonimmigrant to the United States. *See* 8 U.S.C. § 1101(a)(15)(H). For an applicant within the United States to apply for or extend H-4 status, the applicant must complete a Form I-539, Application to Extend/Change Nonimmigrant Status and submit the form to the USCIS. As of March 11, 2019, USCIS added an additional requirement to its H-4 application procedures. USCIS now requires all applicants submitting an I-539 application for H-4 status to appear at the application support center closest to the applicant's primary residence and provide biometric information such as fingerprints, a photograph, or a signature. *See* 8 C.F.R. § 103.2(b)(9).[1] Once approved, the nonimmigrant's H-4 status is subject to the same period of admission as the related nonimmigrant's H-1B status. *See* 8 C.F.R. § 214.2(h)(9)(iv).

Nonimmigrants with H-4 status are approved to live, but not necessarily work, in the United States. *See Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 111 (D.D.C. 2015). For H-4 nonimmigrants to be eligible to work, they must also file Form I-765, Application for Employment Authorization, in accordance with 8 C.F.R. § 274a.13, and provide evidence that establishes the applicant's eligibility for the benefit, the relationship between the applicant and an H-1B nonimmigrant, and the eligibility of the H-1B nonimmigrant. 8 C.F.R. § 214.2(h)(9)(iv). Because the adjudication of an application to extend H-4 status and the application to renew employment authorization are interrelated and submitted to the same USCIS locations, USCIS allows applicants to file both forms concurrently. *See* Fed. Reg. 10,284, 10,298 (Feb. 25, 2015). But USCIS cannot adjudicate requests to renew employment

---

[1] *See also* https://www.uscis.gov/news/alerts/update-uscis-to-publish-revised-form-i-539-and-new-form-i-539a-on-march-8.

authorizations until a determination has been made on the underlying application to extend H-4 status. *Id.* at 10,297.

Plaintiff Chinni Sandeep Chinni is an H-1B nonimmigrant. *See* Declaration of Kalpana Muvvala ("Muvvala Decl.") ¶ 3, ECF No. 6-1. His wife, Kalpana Muvvala, is a nonimmigrant in H-4 status. *See* Pls.' Compl. ¶ 2. Muvvala had previously obtained an EAD, and she worked for an insurance company in Nebraska as a Java Web Application Developer. *See* Muvvala Decl. ¶ 4, 6.

In an effort to renew her H-4 and EAD status before their expiration, Muvvala filed an I-539 application for extension of H-4 status and an I-765 application for extension of her EAD on May 19, 2020. *See* Pls.' Mot. at 1; Declaration of Jennifer A. Roller ¶ 7 ("Roller Decl."), ECF No. 10-3. Muvvala became eligible for these immigration benefits on June 10, 2020, when her husband's H-1B extension petition was approved by USCIS. *See* Roller Decl. ¶ 8. But due to Covid-19, a backlog of applications developed, as the Nebraska's Application Support Centers, where H-4 applicants in Nebraska must go to submit their biometric data, were closed from March 18, 2020 to July 13, 2020. *See* Roller Decl. ¶ 11.

On August 25, 2020, USCIS received a request from Muvvala to expedite the processing of her applications. *See id.* at ¶ 16. USCIS will consider an expedite request if the requesting party can show: (1) severe financial loss if the application is not immediately adjudicated; (2) an urgent humanitarian need; (3) a compelling U.S. government interest; or (4) a clear USCIS error. *See id.* at ¶ 14. All expedite requests claiming severe financial loss must demonstrate that the "requestor is not able to withstand the temporary financial loss that is the natural result of normal processing times." *Id.* at ¶ 15. USCIS denied Muvvala's August 25 request to expedite. *Id.* at ¶ 16.

Plaintiffs filed this lawsuit on August 30, 2020, asserting violations of the Administrative Procedure Act's prohibition on unreasonable delay and seeking mandamus to compel government officers at DOJ, DHS, and USCIS to adjudicate Muvvala's applications and issue a new EAD. *See* Pls.' Compl. ¶¶ 43–60. On September 17, 2020, Plaintiffs filed a Motion for Temporary Restraining Order and Mandatory Injunction, seeking equitable relief under the APA to compel USCIS to immediately adjudicate her application. *See generally* Pls.' Mot. The Court held a hearing on the Motion on September 24, 2020.[2]

## II. Legal Standard

"A temporary restraining order is an extraordinary remedy, one that should be granted only when the moving party, by a clear showing, carries the burden of persuasion." *Sibley v. Obama*, 810 F. Supp. 2d 309, 310 (D.D.C. 2011). "The standard for obtaining injunctive relief through either a temporary restraining order or a preliminary injunction is well established." *Gomez v. Kelly*, 237 F. Supp. 3d 13, 14 (D.D.C. 2017). A moving party must demonstrate (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that the proposed relief is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The movant has the "burden to show that all four factors, taken together, weigh in favor of the injunction." *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009).

---

[2] During the hearing on Plaintiffs' Motion, Plaintiffs' counsel argued that it was arbitrary and capricious for USCIS to require applicants seeking an extension of H-4 status to present biometric data at an application support center if they had previously submitted biometric data to another federal agency. Because Plaintiffs failed to raise an arbitrary and capricious argument claim against the USCIS rule in either their Complaint or Motion, this argument is not properly before the Court at this time. *See Kwok Sze v. Johnson*, 172 F. Supp. 3d 112, 122 n.7 (D.D.C. 2016) (holding that Plaintiff's claims "were not properly before [the] Court" when "they were not raised in [Plaintiff's] Complaint nor in an amended Complaint").

However, "[i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).[3]

### III. Analysis

#### A. Likelihood of Success on the Merits

The Court begins with the "most important factor"—Plaintiffs' likelihood of success on the merits. *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). Plaintiffs base their demand for equitable relief on Section 706(1) of the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*[4]

The APA requires agencies to "proceed to conclude a matter presented to it" in a "reasonable time." 5 U.S.C. § 555(b). To effectuate this requirement, the statute empowers courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). Courts in

---

[3] As other courts have noted, it remains unclear whether the Supreme Court's *Winter v. Natural Resources Defense Council, Inc.* decision displaced the sliding-scale approach to assessing the four preliminary injunction factors. *See Banks v. Booth*, No. 20-849, 2020 WL 1914896, at *3 (D.D.C. Apr. 19, 2020). However, because the Court of Appeals has yet to explicitly overrule the sliding-scale framework, the Court must continue to utilize it. *See Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011).

[4] Plaintiffs' Complaint also seeks equitable relief under the Mandamus Act, 28 U.S.C. § 1361, which empowers courts "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." However, Plaintiffs do not ask for equitable relief on this ground in their Motion for Temporary Restraining Order and Mandatory Injunction. But, even if they had properly raised the Mandamus Act challenge in their Motion, the Court's analysis would remain the same. *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (2010) (noting that the governing standards under Section 706(1) of the APA and the Mandamus Act are "essentially the same").

this Circuit apply the six-factor test set forth in *Telecommunications Research and Action Center v. FCC ("TRAC")* to determine whether agency action has been unreasonably delayed:

> (1) the time agencies take to make decisions must be governed by a "rule of reason";
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

750 F.2d 70, 80 (D.C. Cir. 1984); *see also Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1100 (applying the *TRAC* factors to an unreasonable delay claim under § 706(1)). These factors are only meant to provide guidance to the Court, and "[e]ach case must be analyzed according to its own unique circumstances." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (quoting *Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Bd.*, 750 F.2d 81, 86 (D.C. Cir. 1984)).

Here, the first two *TRAC* factors weigh in the government's favor. Both parties agree that Congress has not provided a specific timetable by which USCIS must process applications to extend H-4 status or renew EADs. "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017). When Congress has not provided a timetable for agency decisions, courts must

6

look to the first *TRAC* factor and determine whether the time an agency takes to make a decision is governed by a "rule of reason." *TRAC*, 750 F.2d at 80.  The time USCIS takes to adjudicate H-4 and EAD applications is governed by such a rule:  USCIS adjudicates applications in the order they were filed, with a select few applications being expedited subject to criteria set forth by the agency.  *See* Roller Decl. ¶¶ 2, 14.  Other federal courts have held that this first-in, first-out method of adjudication constitutes a "rule of reason" and satisfies the first *TRAC* factor.  *See, e.g.*, *Gonzales v. Cissna*, 364 F. Supp. 3d 579, 585 (E.D.N.C. 2019) (holding that USCIS's processing of applications in the order they were filed constituted "a 'rule of reason' under the first *TRAC* factor" in the context of EAD adjudications).  The Court agrees that the time it takes for USCIS to adjudicate H-4 and EAD applications is governed by a rule of reason and an "identifiable rationale."  *See Ctr. for Sci. in the Pub. Interest v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

Furthermore, Plaintiffs have not shown that USCIS has deviated from its rule of reason in this case.  There is no indication that Muvvala's applications have experienced an atypical delay in adjudication.  Muvvala filed her applications with USCIS's Nebraska Service Center on May 19, 2020—roughly four months ago.  The Service Center's typical processing time for applications for an extension of H-4 status is approximately 3.5–5.5 months, and the typical processing time for applications for the renewal of EADs is approximately 4–6 months.  *See* Roller Dec. ¶ 5.  So the four months Muvvala has had to wait is hardly unusual.  In fact, if Muvvala received her requested relief and the court compelled the agency to adjudicate her application immediately, Muvvala's application would be adjudicated on the quicker end of the typical range.  For these reasons, the first two *TRAC* factors weigh in favor of Defendants.

7

On the other hand, the third and fifth *TRAC* factors—Plaintiffs' health and welfare interests and the prejudice caused by the delay—weigh slightly in Plaintiffs' favor.  When Muvvala's current EAD expires, she will no longer be able to work in the United States or renew her driver's license.  *See* Muvvala's Decl. ¶ 9–11.  The government argues that the harms to Plaintiffs are "purely economic harm[s]" that do not implicate "human health and welfare."  Defs.' Opp. 14.  However, Muvvala's inability to drive or work almost certainly has a negative effect on Plaintiffs' welfare.  Thus, the third and fifth factors weigh in favor of the Plaintiffs.

Turning to the sixth *TRAC* factor, Plaintiffs have not alleged bad faith.  But, as the Court of Appeals clarified in *TRAC*, an allegation of bad faith is not necessary to succeed on an unreasonable delay claim.  *TRAC*, 750 F.2d at 80 ("[T]he court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.").  Thus, the sixth factor plays no part in the Court's unreasonable delay analysis.

Finally, the fourth factor—the effect of granting relief on the agency's competing priorities—weighs heavily in the government's favor.  USCIS generally processes both applications for extensions of H-4 status and applications for renewals of EADs in the order they were received.  *See* Roller Decl. ¶ 2.  This system ensures a consistent and equitable way of determining when the agency will adjudicate pending applications.  Granting Plaintiffs' requested relief would simply move Muvvala's applications to the front of the USCIS's backlog, and thus "a judicial order putting [Muvvala] at the head of the queue simply moves all others back one space."  *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991).  Such an action merely "impose[s] offsetting burdens on equally worthy" applicants and produces "no net gain." *Id.* at 73, 75.  Additionally, Court intervention "would impermissibly interfere with the agency's 'unique' and 'authoritative [ ] position to view its projects as a whole, estimate the prospects for

each, and allocate its resources in the optimal way.'" *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020) (quoting *In re Barr Labs., Inc.*, 930 F.2d at 76).

Plaintiffs have not provided an adequate reason why the Court should compel the government to give Muvvala preferential treatment over the other applicants simply because Plaintiffs filed a lawsuit. *See Kangarloo v. Pompeo*, No. 20-354, 2020 WL 4569341, *6 (D.D.C. August 7, 2020). Afterall "[a]gency officials not working on [Muvvala's applications] presumably have not just been 'twiddl[ing] their thumbs.' Perhaps Congress should earmark more funds specifically to [H-4 and EAD application processing], but that is a problem for the political branches to work out." *In re Barr Labs., Inc.*, 930 F.2d at 75 (quoting *Bd. Of Trade v. SEC*, 883 F.2d 525, 531 (7th Cir. 1989)).

Having weighed the *TRAC* factors based on the record before the Court, Plaintiffs have failed to demonstrate that they are likely to succeed on the merits of their unreasonable delay claim. If the likelihood of success on the merits is indeed a free-standing prerequisite for preliminary injunctive relief, as has been suggested, this conclusion would end the Court's inquiry, and Plaintiffs' motion for a temporary restraining order would be denied. *Davis*, 571 F.3d at 1296 (Kavanaugh, J., concurring) (conveying that the Supreme Court's decisions have "made clear that a likelihood of success is an independent, free-standing requirement for a preliminary injunction"). However, because the D.C. Circuit has "not yet decided whether *Winter* . . . is properly read to suggest a 'sliding scale' approach to weighing the four factors be abandoned," *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018), the sliding-scale framework remains binding precedent on this Court. *See United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997) ("[D]istrict judges . . . are obligated to follow controlling circuit precedent until either [the D.C. Circuit] or the Supreme Court, overrule

it."). Regardless, even under the sliding-scale framework, Plaintiffs have failed to establish that the remaining factors militate granting Plaintiffs' request for a temporary restraining order.

### B. Irreparable Harm

The Court next considers whether Plaintiffs have made a showing of irreparable harm. "[P]roving 'irreparable' injury is a considerable burden, requiring proof that the movant's injury is '*certain, great and actual*—not theoretical—and *imminent*, creating a clear and present need for extraordinary equitable relief to prevent harm.'" *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). In addition, "the certain and immediate harm that a movant alleges must also be truly irreparable in the sense that it is 'beyond remediation.'" *Elec. Priv. Info. Ctr. v. U.S. Dep't of Just.*, 15 F. Supp. 3d 32, 44 (D.D.C. 2014) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). The movant must "substantiate the claim that irreparable injury is likely to occur" and "provide proof . . . indicating that the harm is certain to occur in the near future." *Wis. Gas Co.*, 758 F.2d at 674. That is because "issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

Plaintiffs point to two ways in which they will be irreparably harmed if the Court does not immediately intervene and compel USCIS to adjudicate Muvvala's application and immediately issue her a renewed EAD. First, Plaintiffs assert that without a renewed EAD, Muvvala will be placed on leave without pay by her employer until she receives her new EAD. *See* Muvvala's Decl. ¶ 11. These lost wages will be unrecoverable, at least from the government. *Nat'l Min. Ass'n v. Jackson*, 768 F. Supp. 2d 34, 52 (D.D.C. 2011) (Plaintiffs "will be unable to

sue to recover any monetary damages against a government agency in the future because of, among other things, sovereign immunity."). Yet, the "mere fact that economic losses may be unrecoverable does not, in and of itself, compel a finding of irreparable harm." *Id.*  Plaintiffs still bear the "'considerable burden' of proving that those losses are '*certain, great, and actual*.'" *Id.* (quoting *Power Mobility Coal.*, 404 F. Supp. 2d at 204).

Attempting to meet this burden, Plaintiffs provide an affidavit from Muvvala, in which she states that Plaintiffs' household relies on her income, and without it, Plaintiffs will struggle to make monthly mortgage payments, "manage household expenses," and "afford discretionary and extracurricular expenses related to [their] children." Muvvala's Decl. ¶ 15.  There can be no serious dispute that Plaintiffs will experience some level of harm from losing Muvvala's income, but the question of the magnitude of the harm remains.  Although Muvvala claims that Plaintiffs will be unable to make mortgage payments and payments for other expenses, she has not provided the Court with any information about her husband's income or the couple's savings, which might be able to cover the temporary loss of her income, or more information regarding the timing and effects of the payments they may be unable to make.  Without this type of additional evidence, Plaintiffs have failed to demonstrate how a likely short period of lost wages will result in a harm so substantial as to be considered irreparable.

Second, Muvvala's Nebraska driver's license expires on September 24, 2020, and, under Nebraska law, she will be unable to obtain a new driver's license or any temporary driver's privileges until her next EAD card is received.  *See* Pls.' Mot. 2.  Plaintiffs claim that Muvvala's inability to drive is sufficient to constitute irreparable harm.  However, Plaintiffs do not point to, and this Court has not found, any case where a court in this Circuit or any other has held that the loss of driving privileges constitutes irreparable harm.  Although one can certainly imagine an

instance where the movant's ability to drive is so necessary to her daily life or the health and well-being of her family that having the privilege removed would result in irreparable harm, Plaintiffs have proffered no such facts here.  In fact, Plaintiffs have provided the Court with no information regarding the types of harms that might result from Muvvala's inability to drive.

In sum, although Plaintiffs have certainly demonstrated that they will suffer some harm if the Court does not compel the immediate adjudication of Muvvala's applications, the record currently before the Court is insufficient to demonstrate that the harm is so great that it requires the "extraordinary, if not drastic, remedy" of a temporary restraining order.  *Nat'l Treasury Emps. Union v. United States*, No. 19-0050, 2019 WL 266381, at *2 (D.D.C. Jan 18, 2019).

### C. Balance of Hardships and the Public Interest

Finally, the Court turns to the final two factors—the balance of the equities and the public interest.  When, as in this case, the government is the nonmovant, the harm to the opposing party and public interest merge and are considered "one and the same."  *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016).  That is "because the government's interest *is* the public interest."  *Id.*

In this instance, the balance of the equities and the public interest tip against granting Plaintiffs' requested relief.  Despite Plaintiffs' assertion that it is "inconceivable" that granting their request for relief would harm others, a court order moving Muvvala's application to the front of the line of pending applications directly harms those whose applications are currently in front of hers.  Pls.' Mot. 13.  And because USCIS orders its review of applications based on the order in which they were received, Muvvala would jump applicants who filed their applications before her simply because she filed a federal lawsuit.  The relief Plaintiffs seek would thus harm those who filed their applications before Muvvala, and would also force USCIS to deviate from

12

its objective, reasonable, and fair method of determining when a pending application will be reviewed. Requiring such a deviation "impermissibly interferes" with the USCIS's ability to manage and organize its resources in a manner that it judges to be most efficient. *Didban*, 435 F. Supp. 3d at 176; *see also In re Barr Labs., Inc.*, 930 F.2d at 76. These two factors therefore caution against granting Plaintiffs Motion.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' Motion for Temporary Restraining Order and Mandatory Injunction is DENIED. An Order will be entered contemporaneously with this Memorandum Opinion.

DATE: September 25, 2020

CARL J. NICHOLS
United States District Judge